## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PROTEGRITY USA, INC. and PROTEGRITY CORPORATION | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. <u>22-732</u> |
| vs. | ) ) | |
| SUNIL MUNSHANI a/k/a "SUNI" MUNSHANI, LAKESIDE INFOTECH PVT LTD., LAKESIDE INFOTECH, LLC, CLB ASSOCIATES, VATIC IDEAS, INC., BARINGS SECURITY, INC., SURESH MUNSHANI, THE ARJUN MUNSHANI 2013 TRUST, SONJOY JETHMALANI, ANIL DANG, SUNITA MUNSHANI, TINA MUNSHANI, and JOHN DOES 1-10 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | June 1, 2022 |
| Defendants. | ) | |

## <u>COMPLAINT</u>

Plaintiffs Protegrity USA, Inc. ("Protegrity") and Protegrity Corporation ("PC") for their

complaint against Defendants Sunil Munshani a/k/a "Suni" Munshani ("Munshani"), Lakeside

Infotech Pvt Ltd ("Lakeside India"), Lakeside Infotech, LLC ("Lakeside USA"), CLB

Associates ("CLB Associates"), Vatic Ideas, Inc. ("Vatic"), Barings Security, Inc. ("Barings"),

Suresh Munshani ("Suresh Munshani"), The Arjun Munshani 2013 Trust (the "AM Trust"),

Sonjoy Jethmalani ("Jethmalani"), Anil Dang ("Dang"), Sunita Munshani ("Sunita Munshani"),

Tina Munshani ("T. Munshani") and John Does 1-10 (together, the "Defendants"), allege and

state as follows.

1

## PARTIES

1.      Protegrity is a corporation organized under the laws of the state of Delaware, with its headquarters and principal place of business in Salt Lake City, Utah.

2.      PC is a corporation organized under the laws of the Cayman Islands, with its headquarters and principal place of business in Salt Lake City, Utah.

3.      PC owns all of the shares of Protegrity, as well as those of Protegrity's international affiliates.

4.      Munshani, at all times relevant to this action, has resided in Connecticut.

5.      Lakeside India is a foreign company organized under the laws of India, with its principal place of business in Mumbai, India.

6.      Lakeside USA is a company organized under the laws of California, with its principal place of business in California.

7.      CLB Associates is, upon information and belief, a foreign company organized under the laws of Bermuda with its principal place of business in Hamilton, Bermuda.

8.      Vatic is a corporation which was incorporated under Delaware law on February 6, 2019.

9.      Vatic has an office in Singapore that appears to have been incorporated there on April 26, 2019.

10.      Barings is a company which was incorporated under Delaware law on January 15, 2019.

11.      Suresh Munshani is, upon information and belief, a resident of the State of New York.

2

12.     The AM Trust is, upon information and belief, a trust devised under the laws of Connecticut.

13.     Jethmalani is, upon information and belief, a resident of the state of Connecticut.

14.     Dang is, upon information and belief, a resident of the State of New York.

15.     Sunita Munshani is, upon information and belief, a resident of the State of New York.

16.     Munshani, Lakeside India and Lakeside USA collectively may be referred to as the "Lakeside Defendants."

17.     Defendants John Doe #1 - #10 ("Doe Defendants") are unknown person(s), or are principal(s) and/or agent(s) of juristic person(s), who have engaged in the acts and omissions described herein.

18.     Plaintiffs are unaware of the true names and capacities of the Doe Defendants and, therefore, sue those persons by such fictitious names.

19.     Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

20.     The acts alleged herein were undertaken by each Doe Defendant individually, were actions that each Doe Defendant caused to occur, were actions that each Doe Defendant authorized, controlled, directed, or had the ability to authorize, control, or direct, and/or were actions each Doe Defendant assisted, participated in, or otherwise encouraged, and are actions for which each Doe Defendant is liable.

21.     Each of the Doe Defendants was the principal or agent of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of the other Defendants.

3

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331 and 28 U.S.C. § 1367.

23.     Venue is proper in the District Court of Connecticut pursuant to 28 U.S.C. §

1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim[s]

occurred" in Connecticut.

## FACTS

24.     Protegrity provides software and related services both in and outside of the United

States.

25.     Munshani joined Protegrity as its Chief Executive Officer on August 24, 2011,

pursuant to an employment agreement ("Employment Agreement").

26.     Upon information and belief, prior to joining Protegrity, Munshani was the CEO

for Novitaz, a provider of customer relationship management software solutions for the retail,

banking, healthcare, high-tech and hospitality industries.

27.     Prior to Novitaz, Munshani served as a managing partner at Persephone

Investments, a venture capital firm focused on early-stage technology investments.

28.     Munshani also served as CEO at Synetics, Inc.

29.     Prior to that, Munshani founded several software and services companies,

including Paradigm Systems Corporation of America (acquired by Platinum Technology/

Computer Associates) and Trirex Systems.

30.     At the time of his hire at Protegrity, Munshani had spent 25 years either investing

in, or building or leading enterprise software and services companies.

4

31.     When Munshani joined Protegrity, his annual salary was $500,000, as set forth in his Employment Agreement.

32.     On October 17, 2011, Protegrity entered into a Master Agreement for Contractor Services with one Chandru Badlani ("C. Badlani").

33.     C. Badlani purportedly signed the Master Agreement for Contractor Services for himself; Munshani signed the agreement on behalf of Protegrity.  Munshani caused Protegrity to enter into this purported agreement.

34.     Under the Master Agreement for Contractor Services, C. Badlani was to be engaged as an independent contractor to assist in the "development of business partner relationships…as [to] strategic technology, OEM licenses, and/or channel partners."

35.     On June 1, 2013, PC entered into a Services Contract with Lakeside India (which was called Novitaz Systems Pvt. Ltd. at the time).

36.     Lakeside India is a foreign company organized under the laws of India, with its principal place of business in Mumbai, India.

37.     Jayant Ramchandani ("Ramchandani") signed the Services Contract for Lakeside India; Timo Aittola, the then-Executive Vice President of Protegrity, signed the agreement on behalf of Protegrity.

38.     Under the terms of the Services Contract, Lakeside India was to provide software development services and customer service support using personnel in India.

39.     At that time, about 150 employees were working at Lakeside India to help support Protegrity.

40.     The original Services Contract provided that PC would pay for all of the operating expenses incurred by Lakeside India to carry out the services contemplated by the Services Agreement, plus a 25% mark-up on top of those operating expenses.

41.     Prior to Munshani's hiring by Protegrity in 2011, Ramchandani had been a business associate of Munshani.

42.     Munshani acquired preferred shares in Lakeside in 2014 that were held nominally by his father, Arjun Munshani.

43.     On August 8, 2014, Jeffra Ruesink ("Ruesink") was hired by Protegrity as the Director of Customer Marketing, with a starting salary of $75,000, with a start date of August 12, 2014.  Munshani caused Protegrity to hire Ruesink.

44.     On or around October 24, 2014, Protegrity entered into a purported Services Agreement with CLB Associates.

45.     The Services Agreement provided that CLB Associates was to "perform and provide additional computer software development and testing services."

46.     The Services Agreement provides that notice to CLB Associates should be directed to C. Badlani.

47.     On May 15, 2015, Munshani opened a bank account in the name of Protegrity USA Inc. at Bank of America (the "Bank of America Account") by making false statements concerning his authority and position at Protegrity to open and control such account.

48.     Protegrity never had any bank accounts at Bank of America.

49.     Protegrity's address at this time was 5 High Ridge Road, Stamford, CT.

50.     Munshani provided "20 Redding Rd, Easton, CT" as Protegrity's address for the account and used Protegrity's Employer Identification Number (EIN).

51.     On the same day, a $3.5 million check from Protegrity USA to Protegrity USA was deposited in the new bank account opened by Munshani at Bank of America.  Munshani signed the check.

52.     On June 1, 2015, PC entered into an Amendment of the Services Contract with Lakeside India (the "2015 Amendment").

53.     The 2015 Amendment was signed by Ramchandani for Lakeside India and by Munshani for PC.  Munshani caused PC to agree to the terms of the 2015 Amendment.

54.     The 2015 Amendment expanded the services to be provided by Lakeside India and also increased the mark-up to Lakeside India's operating expenses from 25% to 50%.

55.     Munshani never advised the Protegrity Board of Directors or the PC Board of Directors of the material changes in the 2015 Amendment.

56.     On June 11, 2015, Munshani informed the Chairman of the Board of Protegrity that he had made a $3.5 million payment to the IRS in satisfaction of a federal withholding tax obligation.  In fact, there was no such tax obligation.

57.     On June 22, 2015, $300 was withdrawn from the Bank of America Account by ATM.  Upon information and belief, Munshani withdrew and converted these funds for his own personal use.

58.     Arjun Munshani (and/or the AM Trust) converted his preferred shares into common shares representing 50% of the ownership of Lakeside India.

59.     At this time, Ramchandani and his brother retained the other 50% of ownership of Lakeside India.

60.     On August 24, 2015, $300,000 was wired from the Bank of America Account to an account for the benefit of CLB Associates.

61.     The work ostensibly performed by C. Badlani and CLB Associates included generic consulting hours, purported meetings with Munshani, recruiting and sourcing candidates for hire, providing patent litigation advice, providing sales support and the like.

62.     No services for Protegrity were actually performed by C. Badlani or his company, CLB Associates.

63.     The monies purportedly paid to C. Badlani and/or CLB Associates were actually paid to Suresh Munshani, who kept a portion of the funds for himself and remitted the rest of the funds to Munshani.

64.     Munshani impersonated C. Badlani and CLB Associates, or in the alternative, used C. Badlani and CLB Associates as a "strawman."

65.     On September 8, 2015, a large transfer of funds was made from the Bank of America Account to another Bank of America checking account ending in -1580.  This account ending in -1580 belonged to Munshani.  Munshani transferred and converted these funds for his own personal use.

66.     Munshani was paid a salary of $700,000 since January 1, 2016.

67.     On January 7, 2016, Allison Burack, an attorney for Protegrity, drafted a memorandum to Munshani's personnel file (the "Burack Memo") relating to a call between Munshani and a Protegrity Board Member.

68.     Ms. Burack had not witnessed such a call and only reported in the Burack Memo what Munshani related to her about such a purported call.

69.     Munshani directed Burack to write the Burack Memo.

70.     The Burack Memo purported to reflect authorization by Protegrity's Board of Directors for such a salary increase, but it was fraudulent.

71.     Protegrity's Board of Directors has never knowingly approved a salary increase for Munshani.

72.     In July 2016, the remaining funds in the Bank of America Account were withdrawn, and the account was closed.  Munshani transferred and converted these funds for his own personal use.

73.     In 2017 and 2018, Munshani received over $260,000 in bonus payments.

74.     Munshani was awarded an additional 259,000 Protegrity stock options on or about January 1, 2018.

75.     Bonuses, stock options and other forms of remuneration to the CEO may only properly be granted with the approval of Protegrity's Board of Directors.

76.     Protegrity's Board of Directors has never knowingly approved bonus payments or increased stock options for Munshani.

77.     Upon information and belief, Arjun C. Munshani died in 2017, upon which time his ownership interest in Lakeside India was transferred to Raj Munshani, Munshani's mother, or the AM Trust.

78.     On February 1, 2017, Protegrity entered into a separation agreement and release with Munshani's former executive assistant, who had been employed at Protegrity for just a few weeks, after she made allegations of sexual harassment by Munshani.

79.     Munshani did not disclose this settlement or any allegations or internal complaints to the Protegrity Board of Directors or the PC Board of Directors.

80.     In 2018, Protegrity's Board began exploring strategic alternatives for Protegrity, including a possible sale.

81.     On May 4, 2018, PC entered into another Amendment of the Services Contract with Lakeside India (the "2018 Amendment").

82.     The 2018 Amendment was signed by Ramchandani for Lakeside India and by Munshani for PC.  Munshani caused PC to enter into the 2018 Amendment.

83.     In the 2018 Amendment, Lakeside India received several key contract concessions, including: the removal of exclusivity provisions such that Lakeside India could take on other clients and the insertion of a provision allowing Lakeside India to terminate the contract for PC's failure to pay an invoice within 30 days, together with relief from the non-competition provision in the contract in the event of such non-payment.

84.     Munshani never advised the Protegrity Board of Directors or the PC Board of Directors of the material changes in the 2018 Amendment.

85.     Protegrity entered into a reseller-referral agreement with Vatic on February 14, 2019, though it was purportedly signed on November 1, 2018 (the "Vatic Agreement").

86.     Dang is the Director of Vatic and signed the Vatic Agreement for Vatic; Munshani signed the Vatic Agreement on behalf of Protegrity.  Munshani caused Protegrity to enter into the Vatic Agreement.

87.     The Vatic Agreement states that Vatic would have the sole rights to sell or resell Protegrity software licenses and additional maintenance and support services in Asia Pacific, the Middle East, and Africa during the term of the agreement (5 years) and would receive a 40% commission on all sales in the region.

88.     Upon information and belief, Dang is Munshani's brother-in-law, as he is married to Sunita Munshani, who is upon information and belief, Munshani's sister.

89.     Jethmalani was also involved in creating Vatic as a means of defrauding Protegrity.

90.     At no time did Munshani disclose any potential conflicts of interest or other issues related to Protegrity's relationship with Vatic.  The Vatic Agreement was never disclosed to Protegrity's Board of Directors.

91.     On November 16, 2018, Munshani directed his subordinate to create and pay for U.S. Postal Service mailing labels for certain boxes containing certain of Protegrity's official books and records, including Board minutes and communications related to Board meetings or decisions.

92.     Rather than delegating to his assistant the task of sending these books and records, Munshani personally took possession of the boxes, claiming that he would take care of sending them.

93.     Munshani never deposited the boxes containing Protegrity's books and records with the postal service or any private courier.

94.     Munshani later falsely claimed that the U.S. Postal Service had lost the boxes or that they were delivered to a mistaken address, but Munshani either kept or destroyed Protegrity's books and records contained within those boxes.

95.     Protegrity and Barings signed an End-User License and Services Agreement on December 31, 2018 (the "Barings Agreement").

96.     Jethmalani signed the Barings Agreement for Barings, and Munshani signed the Barings Agreement for Protegrity.  Munshani caused Protegrity to enter into the Barings Agreement.

97.     Jethmalani is the Chief Operating Officer and Director of Barings.

98.     In 2019, the Protegrity Board retained the Incentrum Group to explore strategic alternatives for the business of Protegrity.

99.     Upon information and belief, Raj Munshani died in 2018 or 2019, upon which time her ownership interest in Lakeside India was transferred to Munshani or the AM Trust.

100.    At all times relevant herein, Arjun Munshani, Raj Munshani, and/or the AM Trust nominally held interests in Lakeside India for the ultimate benefit of Munshani.

101.    At no time, either before or after the 2015 Amendment or the 2018 Amendment, did Munshani disclose any potential conflicts of interest or other issues related to PC's relationship with Lakeside India.

102.    The Lakeside Defendants further padded their fraudulent scheme by engaging in fraud in the prices charged for the services provided, even before the mark-up was applied.

103.    Further, the Lakeside Defendants engaged in "feather-bedding," that is, retaining excess staff, for the purpose of increasing the funds ultimately payable to the Lakeside Defendants.

104.    A significant amount of the funds due to Lakeside India were diverted to Lakeside USA Inc.  Approximately 50% of those funds were paid to Munshani monthly.

105.    Munshani approved a $205,120 check payment to Vatic on February 19, 2019.

106.    On March 1, 2019, Ruesink was promoted to the Senior Vice President of Global Sales, with a salary increase to $250,000 and a car allowance of $800 a month.

107.    Ruesink and Munshani had a personal relationship since at least 2011.

108.    At no time, either before or after Ruesink was hired, did Munshani disclose any potential conflicts of interest or other issues related to the hiring of Ruesink.

109.    Suraj Badlani ("S. Badlani") was hired as Protegrity's Chief Financial Officer on March 21, 2019.

110.    S. Badlani and Munshani had a personal and/or familial relationship since at least 2011.

111.    At no time, either before or after S. Badlani was hired, did Munshani disclose any potential conflicts of interest or other issues related to the hiring of S. Badlani.  On the contrary, Munshani engaged in efforts to conceal his familiarity with S. Badlani.

112.    On June 28, 2019, Barings requested a cancellation of its agreement with Protegrity and a full refund of about $126,000.

113.    On June 28, 2019, the termination agreement between Barings and Protegrity is executed, with an effective date of June 27, 2019.

114.    Barings had no right to such a refund.

115.    This kind of refund was inconsistent with Protegrity's usual business practices.

116.    Munshani directed that Protegrity issue the refund to Barings.

117.    Barings was an attempt by Munshani and Jethmalani to create a competitor that would improperly utilize Protegrity's intellectual property, steal Protegrity's customers and business, thereby defrauding Protegrity's shareholders and employees and devaluing Protegrity.

118.    S. Badlani received an email on September 16, 2019 from "jayant.ramchnadani@gmail.com" posing as Ramchandani, asking S. Badlani to pay an outstanding invoice for $127,249.37.

119.    Munshani and S. Badlani approved and directed the fraudulent wire payment.

120.    Soon thereafter, the transaction was flagged by one of the banks involved as potentially suspicious.

121.    Upon information and belief, this was part of a scheme conducted by S. Badlani, Munshani, and/or John Does 1-10 to steal funds from Protegrity.

122.    On October 24, 2019, Munshani sent an email to an email account purportedly associated with a Protegrity board member, where he claimed to be a whistleblower.

123.    S. Badlani approved a wire payment of $326,000 to Vatic on October 25, 2019.

124.    Vatic never made any sales on behalf of Protegrity.  Vatic was a fraudulent scheme designed to take credit for sales accomplished by legitimate employees or agents of Protegrity or PC and to siphon unwarranted reseller payments for the benefit of Dang, Jethamalani, Munshani and/or Sunita Munshani.

125.    At no time did Munshani disclose any potential conflicts of interest or other issues related to Protegrity's relationship with Vatic to the Protegrity Board of Directors.

126.    Munshani never advised the Protegrity Board of Directors or the PC Board of Directors that he or a relative of his had an economic interest in Lakeside.

127.    The Defendants did not disclose any potential conflicts of interest or other issues related to the foregoing events.

128.    Doing business with an entity in which he had a financial interest (even if indirect), without disclosing that interest, represented a fundamental breach of Munshani's fiduciary duty of loyalty as an officer, director and employee of Plaintiffs.

129.    Munshani was removed as CEO of Protegrity on October 28, 2019 during a meeting of its Board.

130.    Ruesink was terminated on November 5, 2019.

131.    On November 19, 2019, Protegrity rejected S. Badlani's resignation and terminated his employment effective immediately.

132.     S. Badlani and Ruesink never disclosed their prior relationship with Munshani to the Protegrity Board of Directors or the PC Board of Directors. Munshani never advised the Protegrity Board of Directors or the PC Board of Directors that he had a prior relationship with someone he was going to be putting on Protegrity's payroll.

133.     Until approximately September 2019, Plaintiffs had no knowledge of any of the foregoing events.

134.     Through this action, Plaintiffs seek to recover the damages they sustained at the hands of Defendants, while also disgorging the Defendants' ill-gotten gains from their illegal schemes and placing constructive trusts over Defendants' assets.

135.     Additionally, Munshani's faithless and egregious conduct makes him liable to return all compensation he received during the time periods when he acted disloyally – time periods which likely cover nearly all of his employment.

136.     Munshani also has to account for his theft of funds from Protegrity through statutory treble damages.

137.     Furthermore, the conspiracy among certain Defendants makes each of them liable for the conduct of the others, and the Court is empowered to order that Defendants divest themselves of their interests in their fraudulent businesses: Lakeside India, Lakeside USA, Vatic, CLB Associates and Barings.

138.     Lakeside India, Lakeside USA, Vatic, CLB Associates and Barings are all "enterprises" through which Munshani and other Defendants engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962.

139.     Defendants' wanton and willful pattern of violating Plaintiffs' rights also cries out for the imposition of punitive damages.

## CAUSES OF ACTION

### COUNT I – BREACH OF FIDUCIARY DUTY (as to Munshani)

140.     Plaintiffs repeat and reallege the foregoing paragraphs 1-139, as if fully stated herein.

141.     During Munshani's time as Chief Executive Officer, director, and/or an employee of Plaintiffs, a fiduciary relationship existed with each of the Plaintiffs, which gave rise to (a) a duty of loyalty on the part of Munshani to the Plaintiffs, (b) an obligation on the part of Munshani to act in the best interests of the Plaintiffs, and (c) an obligation on the part of Munshani to act in good faith in any manner relating to the Plaintiffs.

142.     Given the existence of the fiduciary relationship, Munshani was required to disclose his conflicts of interest with Lakeside, the Vatic relationship, the Barings relationship, the C. Badlani and CLB Associates relationships, his hiring of Ruesink and S. Badlani, the embezzlement of the $3.5 million dollars and other vital and pertinent information to Plaintiffs.

143.     Furthermore, the existence of the fiduciary relationship required Munshani not to direct Plaintiffs' employees or agents to take actions which he did not have the authority to direct, including directing employees or agents of Plaintiffs to pay certain compensation to Munshani, embezzle money for Munshani or to settle claims for his benefit, all of which had not been authorized by the Plaintiffs.

144.     Munshani did not disclose those conflicts of interest, suspicious activities or other vital and pertinent information to Plaintiffs or otherwise act in good faith.

145.     Rather, Munshani advanced his own interests to the detriment of the Plaintiffs' interests.

146.     Plaintiffs have sustained damages as a proximate result of Munshani's breach of fiduciary duty, in an amount to be determined at trial, and are entitled to all available remedies at law or equity arising from his breach.

147.     Munshani's unlawful actions were intentional, willful, wanton or done with reckless indifference to Plaintiffs' rights, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

**COUNT II: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (as to all Defendants except Munshani)**

148.     Plaintiffs repeat and reallege the foregoing paragraphs 1-147 of Count I, as if fully stated herein.

149.      Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB Associates, Suresh Munshani, AM Trust, and John Does 1-10 knowingly and substantially aided Munshani in these wrongful acts, and they were aware of their role in an illegal scheme at the time they provided assistance.

150.     Plaintiffs have sustained damages as a proximate result of Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB Associates, Suresh Munshani, AM Trust, and John Does 1-10 aiding and abetting Munshani's breach of fiduciary duty, in an amount to be determined at trial, and are entitled to all available remedies at law or equity arising from his breach.

151.     Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB Associates, Suresh Munshani, AM Trust, and John Does 1-10 unlawful actions were intentional,

willful, wanton or done with reckless indifference to Plaintiffs' rights, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

### COUNT III – FRAUDULENT MISREPRESENTATION (as to Munshani)

152.    Plaintiffs repeat and reallege the foregoing paragraphs 1-139, as if fully stated herein.

153.    Munshani made false representations that he knew to be false with respect to his conflicts of interest with Lakeside, the Vatic relationship, the Barings relationship, the C. Badlani and CLB Associates relationships, his hiring of Ruesink and S. Badlani, the embezzlement of the $3.5 million dollars and other vital and pertinent information to Plaintiffs. Specifically, Munshani made false statements regarding those conflicts and suspicious activities, and his salary, bonuses, the grant of his stock options, and settlement agreements.

154.    Munshani took these actions to induce Plaintiffs to act on his representations.

155.    Plaintiffs took actions to their detriment based on Munshani's representations.

156.    Plaintiffs have suffered damages as a result of Munshani's fraudulent misrepresentation, in an amount to be determined at trial.

157.    Munshani's unlawful actions were intentional, willful, wanton or done with reckless indifference to Plaintiffs' rights under the common law, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

### COUNT IV –FRAUDULENT NONDISCLOSURE (as to Munshani)

158.    Plaintiffs repeat and reallege the foregoing paragraphs 1-139, as if fully stated herein.

159.    By virtue of his roles as Chief Executive Officer, director, and/or an employee of Plaintiffs, Munshani had a duty to disclose his conflicts of interest with Lakeside, the Vatic

relationship, the Barings relationship, the C. Badlani and CLB Associates relationships, his hiring of Ruesink and S. Badlani, the embezzlement of the $3.5 million dollars and other vital and pertinent information to Plaintiffs.

160.    Furthermore, Munshani's had a duty not to direct Plaintiffs' employees or agents to take actions which he did not have the authority to direct, including directing employees or agents of Plaintiffs to pay certain compensation to Munshani, embezzle money for Munshani or to settle claims for his benefit, all of which had not been authorized by the Plaintiffs.

161.    Munshani did not make a full and fair disclosure of known facts connected with those conflicts of interest, and suspicious activities, with an intent or expectation that the Plaintiffs would make or continue in a mistake to rely upon him and allow his illicit activities to continue.

162.    Munshani took these actions to induce Plaintiffs to act to their detriment.

163.    Plaintiffs took actions in reliance on Munshani's non-disclosure to Plaintiff's detriment and were injured as a result.

164.    Plaintiffs suffered damages as a result of Munshani's fraudulent non-disclosure, in an amount to be determined at trial.

165.    Munshani's unlawful actions were intentional, willful, wanton or done in reckless disregard of Plaintiffs' rights under the common law, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

**COUNT V – CONVERSION (as to all Defendants)**

166.    Plaintiffs repeat and reallege the foregoing paragraphs 1-139, as if fully stated herein.

19

167.    Plaintiffs had ownership or the right to possess the specific monies used to fund Munshani's salary increase in 2016, the annual bonuses that he received, the grant of his stock options in 2018, certain settlement agreements, the hiring of Ruesink and S. Badlani, or Munshani's self-interest in the Lakeside India and USA relationships, the Vatic relationship, the Barings relationship, the C. Badlani and CLB Associates relationships, and the embezzlement of $3.5 million.

168.    Munshani, Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB Associates, Suresh Munshani, AM Trust, and John Does 1-10 deprived the Plaintiffs of these monies for an indefinite period of time, which continues to this day.

169.    Munshani, Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB Associates, Suresh Munshani, AM Trust, and John Does 1-10 conduct and retention of these monies was unauthorized.

170.    Plaintiffs have suffered damages as a result of the aforementioned Defendants' conversion.

171.    The aforementioned Defendants' unlawful actions were intentional, willful, wanton or done with reckless indifference of Plaintiffs' rights under the common law, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

**COUNT VI – UNJUST ENRICHMENT (as to all Defendants)**

172.    Plaintiffs repeat and reallege the foregoing paragraphs 1-139, as if fully stated herein.

173.    Munshani,  Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB Associates, Suresh Munshani, AM Trust, and John Does 1-10 benefitted financially from Munshani's actions, including his salary increase in 2016, the annual bonuses that he received,

the grant of his stock options in 2018, certain settlement agreements, the embezzlement of $3.5 million, the hiring of Ruesink and S. Badlani, or Munshani's self-interest in the Lakeside India and USA relationships, the Vatic relationship, the Barings relationship, and the C. Badlani and CLB Associates relationship.

174.    The aforementioned Defendants unjustly did not repay Plaintiffs for the benefits of the misappropriated funds.

175.    The failure of payment was to the Plaintiffs' detriment.

176.    Plaintiffs have suffered damages as a result of the aforementioned Defendants' unjust enrichment.

**COUNT VII– STATUTORY THEFT, CONN. GEN. STAT. § 52-564 (as to all Defendants)**

177.    Plaintiffs repeat and reallege the foregoing paragraphs 1-139, as if fully stated herein.

178.    Munshani, Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB Associates, Suresh Munshani, AM Trust, and John Does 1-10 stole money belonging to Plaintiffs or knowingly received and concealed money belonging to Plaintiffs, including the monies used to fund Munshani's salary increase in 2016, the annual bonuses that he received, the grant of his stock options in 2018, certain settlement agreements, the hiring of Ruesink and S. Badlani, or Munshani's self-interest in the Lakeside India and USA relationships, the Vatic relationship, the Barings relationship, the C. Badlani and CLB Associates relationship, and the embezzlement of $3.5 million.

179.    Munshani, Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB Associates, Suresh Munshani, AM Trust, and John Does 1-10 intended to deprive Plaintiffs of monies belonging to Plaintiffs and to appropriate the same to themselves or to a third party.

180.     Plaintiffs have suffered damages as a result of the aforementioned Defendants'

theft, in an amount to be determined at trial, and are entitled, by operation of law, to treble

damages.

**COUNT VIII- CIVIL CONSPIRACY (as to all Defendants)**

181.     Plaintiffs repeat and reallege the foregoing paragraphs 1-139, as if fully stated

herein.

182.     Munshani, Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB

Associates, Suresh Munshani, AM Trust, and John Does 1-10 combined to do a criminal or an

unlawful act or a lawful act by criminal or unlawful means.

183.     Such act was done by one or more of the aforementioned Defendants pursuant to

the scheme to steal, convert or otherwise deprive Plaintiffs of monies belonging to them and in

furtherance of that objective.

184.     Plaintiffs have suffered damages as a result of the aforementioned Defendants'

conspiracy.

185.     The aforementioned Defendants' unlawful actions were intentional, willful,

wanton or done with reckless indifference of Plaintiffs' rights under the common law, entitling

Plaintiffs to punitive damages in an amount to be determined at trial.

**COUNT IX – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT ("RICO") (EXTORTION) (as to all Defendants)**

186.     Plaintiffs repeat and reallege the foregoing paragraphs 1-185, as if fully stated

herein.

187.     Munshani, Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB

Associates, Suresh Munshani, AM Trust, and John Does 1-10 engaged in racketeering activity as

they were engaged in extortion, with at least two related predicate acts in the last ten (10) year period.

188.   Lakeside Defendants participated in an "enterprise" through a pattern of extortion and racketeering activity with Lakeside. Further, Lakeside Defendants conspired to participate in an "enterprise" through a pattern of extortion and racketeering activity with Lakeside.

189.   Munshani, Vatic, Jethmalani and Dang participated in an "enterprise" through a pattern of extortion and racketeering activity with Vatic. Further, Munshani, Vatic, Jethmalani and Dang conspired to participate in an "enterprise" through a pattern of extortion and racketeering activity with Vatic.

190.   Jethmalani, Barings and Munshani participated in an "enterprise" through a pattern of extortion and racketeering activity with Barings. Further, Jethmalani, Barings and Munshani conspired to participate in an "enterprise" through a pattern of extortion and racketeering activity with Barings.

191.   Munshani, Suresh Munshani, and CLB Associates participated in an "enterprise" through a pattern of extortion and racketeering activity with CLB Associates and C. Badlani. Munshani, Suresh Munshani, and CLB Associates in an "enterprise" through a pattern of extortion and racketeering activity with CLB Associates and C. Badlani.

192.   The aforementioned Defendants' extortion and racketeering activities have impacted Plaintiffs' business and related interstate commerce.

193.   Plaintiffs suffered economic damages as a result of the aforementioned Defendants' extortion and racketeering activities.

**COUNT X – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT ("RICO") (EMBEZZLEMENT) (as to all Defendants)**

194.    Plaintiffs repeat and reallege the foregoing paragraphs 1-193, as if fully stated

herein.

195.    Munshani, Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB

Associates, Suresh Munshani, AM Trust, and John Does 1-10 engaged in racketeering activity as

they were engaged in embezzlement, with at least two related predicate acts in the last ten (10)

year period.

196.    Lakeside Defendants participated in an "enterprise" through a pattern of

embezzlement and racketeering activity with Lakeside. Further, Lakeside Defendants conspired

to participate in an "enterprise" through a pattern of embezzlement and racketeering activity with

Lakeside.

197.    Munshani, Jethmalani, Vatic and Dang participated in an "enterprise" through a

pattern of embezzlement and racketeering activity with Vatic. Further, Munshani, Jethmalani,

Vatic and Dang conspired to participate in an "enterprise" through a pattern of embezzlement

and racketeering activity with Vatic.

198.    Jethmalani, Barings and Munshani participated in an "enterprise" through a

pattern of embezzlement and racketeering activity with Barings. Further, Jethmalani, Barings and

Munshani conspired to participate in an "enterprise" through a pattern of embezzlement and

racketeering activity with Barings.

199.    Munshani, Suresh Munshani, and CLB Associates participated in an "enterprise"

through a pattern of embezzlement and racketeering activity with CLB Associates and C.

Badlani. Further, Munshani, Suresh Munshani, and CLB Associates conspired to participate in

an "enterprise" through a pattern of embezzlement and racketeering activity with CLB

Associates and C. Badlani.

200.    The aforementioned Defendants' embezzlement and racketeering activities have

impacted Plaintiffs' business and related interstate commerce.

201.    Plaintiffs suffered economic damages as a result of the aforementioned

Defendants' embezzlement and racketeering activities.

### COUNT XI – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") (WIRE FRAUD) (as to all Defendants)

202.    Plaintiffs repeat and reallege the foregoing paragraphs 1-201, as if fully stated

herein.

203.    Munshani, Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB

Associates, Suresh Munshani, AM Trust, and John Does 1-10 engaged in racketeering activity as

they were engaged in wire fraud, with at least two related predicate acts in the last ten (10) year

period.

204.    Lakeside Defendants participated in an "enterprise" through a pattern of wire

fraud and racketeering activity with Lakeside. Further, Lakeside Defendants conspired to

participate in an "enterprise" through a pattern of wire fraud and racketeering activity with

Lakeside.

205.    Munshani, Jethmalani, Vatic and Dang participated in an "enterprise" through a

pattern of wire fraud and racketeering activity with Vatic. Further, Munshani, Jethmalani, Vatic

and Dang conspired to participate in an "enterprise" through a pattern of wire fraud and

racketeering activity with Vatic.

206.    Jethmalani, Barings and Munshani participated in an "enterprise" through a

pattern of wire fraud and racketeering activity with Barings. Further, Jethmalani, Barings and

Munshani conspired to participate in an "enterprise" through a pattern of wire fraud and racketeering activity with Barings.

207.     Munshani, Suresh Munshani, and CLB Associates participated in an "enterprise" through a pattern of wire fraud and racketeering activity with CLB Associates and C. Badlani. Further, Munshani, Suresh Munshani, and CLB Associates conspired to participate in an "enterprise" through a pattern of wire fraud and racketeering activity with CLB Associates and C. Badlani.

208.     The aforementioned Defendants' wire fraud and racketeering activities have impacted Plaintiffs' business and related interstate commerce.

209.     Plaintiffs suffered economic damages as a result of the aforementioned Defendants' wire fraud and racketeering activities.

**COUNT XII – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") (HONEST SERVICES FRAUD) (as to all Defendants)**

210.     Plaintiffs repeat and reallege the foregoing paragraphs 1-209, as if fully stated herein.

211.     Munshani, Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB Associates, Suresh Munshani, AM Trust, and John Does 1-10 engaged in racketeering activity as they were engaged in honest services fraud, with at least two related predicate acts in the last ten (10) year period.

212.     Lakeside Defendants participated in an "enterprise" through a pattern of honest services fraud and racketeering activity with Lakeside. Further, Lakeside Defendants conspired to participate in an "enterprise" through a pattern of honest services fraud and racketeering activity with Lakeside.

213.   Munshani, Vatic, Jethmalani and Dang participated in an "enterprise" through a pattern of honest services fraud and racketeering activity with Vatic. Further, Munshani, Vatic, Jethmalani and Dang conspired to participate in an "enterprise" through a pattern of honest services fraud and racketeering activity with Vatic.

214.   Jethmalani, Barings and Munshani participated in an "enterprise" through a pattern of honest services fraud and racketeering activity with Barings. Further, Jethmalani, Barings and Munshani conspired to participate in an "enterprise" through a pattern of honest services fraud and racketeering activity with Barings.

215.   Munshani, Suresh Munshani, and CLB Associates participated in an "enterprise" through a pattern of honest services fraud and racketeering activity with CLB Associates and C. Badlani. Further, Munshani, Suresh Munshani, and CLB Associates conspired to participate in an "enterprise" through a pattern of honest services fraud and racketeering activity with CLB Associates and C. Badlani.

216.   The aforementioned Defendants' honest services fraud and racketeering activities have impacted Plaintiffs' business and related interstate commerce.

217.   Plaintiffs suffered economic damages as a result of the aforementioned Defendants' honest services fraud and racketeering activities.

**COUNT XIII – VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA"), CONN. GEN. STAT. § 42-110B(A) (as to all Defendants)**

218.   Plaintiffs repeat and reallege the foregoing paragraphs 1-217, as if fully stated herein.

219.   Munshani, Jethmalani, Dang, Vatic, Barings, Lakeside India, Lakeside USA, CLB Associates, Suresh Munshani, AM Trust, and John Does 1-10 have committed unfair or deceptive acts or practices.

220.    The complained of acts were performed in the conduct of trade or commerce.

221.    The aforementioned Defendants' acts offend public policy, and are immoral, unethical, oppressive or unscrupulous.

222.    The aforementioned Defendants' acts were the proximate cause of harm to the Plaintiffs

223.    The aforementioned Defendants' unlawful acts were intentional, willful, wanton or done with reckless indifference to Plaintiffs' rights, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

224.     A copy of this complaint shall be mailed to the Attorney General and to the Commissioner of Consumer Protection pursuant to Conn. Gen. Stat. § 42-110g(c).

**COUNT XIV – BREACH OF CONTRACT (as to Munshani)**

225.    Plaintiffs repeat and reallege the foregoing paragraphs 1-139, as if fully stated herein.

226.    Plaintiffs and Munshani entered into the Employment Agreement, which is a valid contract.

227.    Under the terms of the Employment Agreement, Munshani agreed that he would "perform [his] jobs in compliance with the applicable laws and regulations, and in line with business ethics of the highest quality."

228.    Munshani has breached the Employment Agreement, by, *inter alia*, not complying with all applicable laws and regulations and not performing his job in line with the highest quality of business ethics.

229.    Plaintiffs have performed their obligations under the Employment Agreement.

230.    Plaintiffs suffered damages as a consequence of Munshani's breach of contract.

28

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiffs respectfully pray that the Court enter such orders and

judgment as appropriate:

A.  All damages and monetary relief to make Plaintiffs whole, including compensatory damages;

B.  Equitable forfeiture of Munshani's compensation, profits or benefits;

C.  Imposition of a constructive trust over all assets traceable to the proceeds from the

Defendants' scheme, including bank accounts and real property in Connecticut, Singapore,

New York, California, India and elsewhere;

D.  The issuance of preliminary and permanent injunctions requiring the aforementioned

Defendants to refrain from dissipating their assets or further damaging Plaintiffs' legal rights;

E.  The issuance of an order requiring Lakeside Defendants to divest legal ownership of

Lakeside to persons not acting in concert with them, or, in the alternative, to divest the assets

of Lakeside to persons not acting in concert with them;

F.  The issuance of an order requiring Dang, Jethmalani and Munshani to divest legal ownership

of Vatic to persons not acting in concert with them, or, in the alternative, to divest the assets

of Vatic to persons not acting in concert with them;

G.  The issuance of an order requiring Jethmalani and Munshani to divest legal ownership of

Barings to persons not acting in concert with them, or, in the alternative, to divest the assets

of Barings to persons not acting in concert with them;

H.  Common law punitive damages;

I.  Punitive damages pursuant to CUTPA and RICO;

J.  Statutory treble damages pursuant to Conn. Gen. Stat. §52-564;

K.  An award of Plaintiffs' attorneys' fees and costs;

L.  Pre- and post-judgment interest on all sums recoverable; and

M.  All such other and further relief that the Court deems equitable and just to grant.

**Plaintiffs**
**Protegrity USA, Inc. and**
**Protegrity Corporation**

By: */s/ Monte E. Frank*
Monte E. Frank
Steven J. Stafstrom, Jr.
Pullman & Comley, LLC
850 Main Street PO Box 7006
Bridgeport, CT 06601-7006
203-330-2000
mfrank@pullcom.com
sstaftsrom@pullcom.com